UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
NAPOLEON ESTUARDO BARRAGAN,        :
                                   :
                    Petitioner,    :
                                   :          **OPINION AND ORDER**
         -against-                 :          06-cv-00623 (DLI) (SMG)
                                   :
MICHAEL CHERTOFF, Secretary of the United :
States Department of Homeland Security;     :
ALBERTO GONZALES, Attorney General, United :
States Department of Justice; MARY ANN      :
GANTNER, Director, New York District, United :
States Citizenship and Immigration Services; :
                                   :
                    Respondents.   :
------------------------------------------------------------x

**DORA L. IRIZARRY, U.S. District Judge**:

Petitioner Napoleon Estuardo Barragan ("Barragan") has a filed a petition for *de novo* review of respondent United States Citizenship and Immigration Services' denial of his application for naturalization. The petition is before the court pursuant to § 310(c) of the Immigration and Nationalization Act ("INA"), codified at 8 U.S.C. § 1421(c), which allows for *de novo* review by federal district courts of denials of applications for naturalization. Respondents have moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). For the reasons below, the Respondents' motion is granted.

**I.     FACTS**

As set forth in Barragan's Petition for *De Novo* Review of Administrative Naturalization Denial ("Petition"), Barragan is a native of Ecuador and was granted lawful permanent residence in the United States in April 1973. (Petition ¶¶ 9, 15). In November 1994, Barragan pled guilty to grand larceny in the second degree, N.Y. Penal Law § 115.40. (Petition ¶ 16). Although Respondents attempted to remove Barragan from the country, removal proceedings were

terminated in January 2002. (Petition ¶ 17). In May 2003, Barragan applied for naturalization. (Petition ¶ 18). The application was rejected in January 2005. (Petition ¶ 19). Thereafter, Barragan requested, and was granted, a hearing on the denial of the application. *Id.* The hearing took place in July 2005. *Id.* Upon review, the application for naturalization was formally denied in October 2005. (Petition ¶ 20).

Barragan's application was denied because he failed to satisfy INA § 316(a)(3), which requires that an applicant for naturalization "during all the periods referred to in this subsection has been and still is a person of good moral character." 8 U.S.C. § 1427(a)(3). Pursuant to INA § 101(f)(8), an applicant is not considered to be "of good moral character" if he or she has "at any time been convicted of an aggravated felony." 8 U.S.C. § 1101(f)(8). At the time Barragan applied for, and was denied, naturalization, an aggravated felony, for purposes of INA § 101(f)(8), was defined as "a theft offense . . . for which the term of imprisonment is at least one year." 8 U.S.C. § 1101(a)(43)(G). Thus, Barragan's conviction in 1994 for grand larceny in the second degree, a theft offense that carries greater than a one year term of imprisonment, does not permit him to meet the "good moral character" requirements of INA § 316(a)(3).

In the Petition, Barragan argues that this result violates his right to Equal Protection under the Fifth Amendment and also violates the *Ex Post Facto* doctrine. Barragan argues that Respondents violated their duty "to perform a [sic] fair and proper administrative naturalization" because of the constitutional violations. (Petition ¶ 25). For the reasons set forth below, the Court finds no constitutional violation in Respondents' application of the "good moral character" requirements of INA § 316(a)(3). The Petition is denied as a matter of law.

## II. DISCUSSION

*Rule 12(c) Standards*

A motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is analyzed by the same standard as one made under Fed. R. Civ. P. 12(b)(6). *See Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999). Thus, the court accepts as true the allegations set forth in the complaint "and draw[s] all reasonable inferences in favor of the nonmoving party." *Id.* (*citing Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). A complaint need only provide fair notice of the grounds upon which a claim is based. *See Swierkiewicz v. Sorema* N.A., 534 U.S. 506, 508 (2002). The issue for the court in determining a Rule 12(c) motion is whether the plaintiff can state a claim and "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1969 (2007). Judgment on the pleadings is appropriate in this case because Barragan's claim is not viable.

*There Is No Equal Protection Clause Violation*

Barragan weaves a complicated legal theory in his attempt to show that the denial of his petition for naturalization violated his Fifth Amendment Equal Protection rights. Barragan's theory is as follows: In 1990, 8 U.S.C. § 1101(f)(8) was amended to bar applicants convicted of an aggravated felony from showing good moral character. At the time, an aggravated felony was defined as a theft offense punishable by five or more years in prison. *See* 8 U.S.C. § 1101(a)(43)(G) (1994). In 1996, 8 U.S.C. § 1101(a)(43)(G) was amended to make a theft offense punishable by one or more years an aggravated felony. Also in 1996, 8 U.S.C. § 1101(f)(8) was made retroactive so that an applicant who "at any time" had been convicted of an

aggravated felony (such as a theft punishable by a year in prison) was no longer able to demonstrate the good moral character required by 8 U.S.C. § 1427(a)(3). However, the Code of Federal Regulations makes the new aggravated felony definition retroactive only back to 1990 (the same year 8 U.S.C. § 1101(f)(8) was amended). Barragan argues that this statutory scheme violates his Equal Protection rights because applicants for naturalization would be treated differently based simply on the date they applied for naturalization or the date of their conviction.

By way of example, an applicant who committed a theft offense punishable by one year in prison prior to 1990 and applied for naturalization prior to 1996 would be considered to be of good moral character. Similarly, an applicant who committed a theft offense punishable by one year in prison after 1990, but who applied for naturalization prior to 1996 would also be considered of good moral character. The same is true of an applicant who committed a theft offense punishable by one year in prison prior to 1990 but who applied for naturalization after 1996; the 1996 changes were only retroactive to 1990 and therefore aggravated felonies committed before 1990 do not bar an applicant from demonstrating good moral character. In contrast, an applicant, such as Barragan, who committed a theft offense punishable by one year in prison after 1990, but who applied after 1996, will never be able to show good moral character.

First, its important to note that the Second Circuit has already held that the expanded definition of aggravated felony found in §1101(a)(43)(G) is retroactive (to 1990). *Chan v. Gantner,* 464 F.3d 289, 293 (2d Cir. 2006) ("because 8 U.S.C. § 1101(f)(8) incorporate[s] 8 U.S.C. § 1101(a)(43) by reference, it is clear that Congress intended that the aggravated felony

definitions would apply retroactively to bar persons convicted of those crimes from establishing the good moral character necessary for naturalization."); *see also Kuhali v. Reno*, 266 F.3d 93 (2d Cir. 2001). Under *Chan*, the date of the aggravated felony is irrelevant to determining an applicant's good moral character. Rather, the issue is whether the crime committed was classified as an aggravated felony "at any time." *See Chan*, 464 F.3d at 293. Moreover, the Second Circuit has concluded on two occasions that an aggravated felony committed "at any time" bars a finding of good moral character – the time is not limited to the five-year period before the application was made. *See Chan* at 294; *Boatswain v. Gonzales*, 414 F.3d 413, 418 (2d Cir. 2005).

The retroactive effect of § 1101(a)(43) does not constitute an equal protection violation because it is rationally related to a legitimate government interest. *Tanov v. I.N.S., U.S. Dept. of Justice,* 443 F.3d 195, 201-202 (2d Cir. 2006) (holding that "[d]istinctions among 'similarly situated' groups of aliens are subject to rational basis review."). To demonstrate that the statutory scheme violates equal protection, Barragan is required to show "that the government regulation is arbitrary and/or unreasonable, and not rationally related to a legitimate government interest." *Id.* Barragan has failed to do so.

When evaluating immigration legislation, the court's role is "limited." *Azizi v. Thornburgh*, 908 F.2d 1130, 1133 (2d Cir. 1990). As the Government points out, assuring that naturalized citizens are of good moral character is a legitimate government interest. Moreover, treating applicants for naturalization differently based on the date on which they were convicted of a crime is clearly rationally related to this interest: applicants whose crimes are further in the past are more likely to be of good moral character than more recent violators. This is exactly the

opinion reached by the Second Circuit in *Kuhali*, *supra*, where the court found that "Congress has a legitimate interest in protecting society from the commission of aggravated felonies as well as the illegal trafficking, possession, and use of dangerous weapons, and legislation that deports aliens who presently commit or who have committed those acts in the past is a rational means of furthering that interest." *Id.* at 111. Thus, the Petition fails to state a cognizable Equal Protection violation, and Barragan cannot demonstrate that Respondents violated their duties to perform a fair and proper administrative naturalization.

*There Is No Violation of the Ex Post Facto Doctrine*

The Ex Post Facto doctrine protects against the retroactive application of legislation. *See Lynce v. Mathis*, 519 U.S. 433, 439 & n. 12, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997); *see also* U.S. Const. art. I, § 9 ("[n]o Bill of Attainder or ex post facto Law shall be passed."); *id.* § 10 ("[n]o State shall ... pass any ... ex post facto Law."). Barragan's claim that the retroactive application of the expanded definition of an aggravated felony has an impermissible *ex post facto* effect lacks merit. The Second Circuit has unequivocally found that there is no constitutional bar to the retroactive application of the expanded definition of an aggravated felony. The basis of the Second Circuit's finding is two fold. First, immigration regulations are civil and not criminal, and the Ex Post Facto doctrine does not apply to civil matters. *Guaylupo-Moya v. Gonzales*, 423 F.3d 121, 132 (2d Cir. 2005) ("there can be no constitutional violation in applying AEDPA or IIRIRA to criminal conduct pre-dating the statutes because the *Ex Post Facto* Clause only applies to penal legislation and [immigration] proceedings have consistently been characterized as civil in nature."). Second, Congress clearly intended the expanded definition of an aggravated felony to apply retroactively. *See Chan*, 464 F3d at 293 ("statutes may and should be

retroactively applied when the statute at issue clearly indicates that it is intended to be retroactive"); *Kuhali*, 266 F.3d at 111-12 ("[a] long and constant line of precedent establishes that statutes retroactively setting criteria for deportation do not violate the *ex post facto* clause."). Thus, there is no cognizable violation of the *ex post facto* doctrine and Barragan cannot demonstrate that the Respondents violated their duties to perform fair and proper administrative naturalization.

## III. CONCLUSION

For the reasons stated above, the Petition is dismissed.

SO ORDERED

DATED:  Brooklyn, New York
     July 20, 2007

                _____/s/_____
                DORA L. IRIZARRY
               United States District Judge